Filed 9/7/21; certified for partial publication 9/28/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C090234 |
| Plaintiff and Respondent, | (Super. Ct. No. 62141458) |
| v. | |
| GREGORY LEE WISE, | |
| Defendant and Appellant. | |

Defendant Gregory Lee Wise texted and called a woman, R.F., hundreds of times for three years after they had gone on two dates despite her continued demands for him to stop. During this period, defendant stored hundreds of pictures of R.F. on his computer taken from the internet and used in a sexual manner. He also took and stored pictures of other women without their knowledge as they parked their cars or walked down the street. After defendant's arrest, police officers searched his home and discovered the

1

photographs along with several assault weapons and ammunition. At trial, the court permitted admission of both sets of photographs over defendant's objections. Defendant was convicted of stalking, unlawfully manufacturing an assault weapon, and possession of several assault weapons, among other crimes.

On appeal, defendant challenges the admission of both sets of photographs arguing they were irrelevant and prejudicial. He also asserts the court improperly failed to provide a lesser included offense jury instruction for the unlawfully manufacturing an assault weapon charge. We affirm.

BACKGROUND

I

*Defendant's Stalking of R.F.*

Defendant met R.F. through a dating website in 2011. After a couple of casual dates involving walking around public parks, she relayed to defendant she was not interested in pursuing the relationship. Defendant still continued to text and call her over 900 times for the following three years, even though R.F. only responded to tell him to stop and attempted to pretend she had changed her number. In 2015, defendant resorted to threatening to kill himself if she did not reciprocate his feelings towards her. Defendant had also changed his profile on the dating website to say, "[R.F.] you are the only one for me," call R.F. his "soulmate," and that: "She just confuzzled [*sic*] and continues to play games with me as she had from the very beginning. . . . I been 'stalkering' her lately. Whatever that word means that concept means. She so fraidy [*sic*] of me she won't even dare respond so I guesses [*sic*] I will have to confront her." Around discovering defendant's profile changes, R.F. also found a video defendant uploaded showing him shooting guns while running through a forest in a military fashion.

On June 19, 2015, defendant sent R.F. two messages on two different messaging platforms. The first said: "I stalkered [*sic*] you on the 15th of June 2015." The second

2

said: "You have to understand please please just talk to me I don't want to have to come after you I just want for you to do what is right I have to be with you."

On June 22, 2015, defendant was arrested after a light rail rider called 911 reporting defendant had a gun in his pocket on the train. Officers found on defendant a map to R.F.'s house and a document titled "Plan Trackering [*sic*]" that discussed placing a tracking device on a vehicle. Defendant also had a document with R.F.'s license plate number and a description of her vehicle.

Police officers later searched defendant's home and electronic storage devices. R.F.'s name appeared over 2,000 times in one device, along with hundreds of photos of her and other women. Officers also found in defendant's home several weapons and containers of ammunition. Among the guns recovered was an FN Herstal Belgium SCAR 176 (Herstal). The store defendant bought the Herstal from had to convert the gun to make it compliant with California gun laws by adding a bullet button and reducing the magazine capacity. Defendant asked the store if he could watch them make the gun compliant but they refused. When police found the Herstal in defendant's house the gun did not have the bullet button and the magazine capacity had been increased.

Police also later determined defendant had on three separate occasions stolen some of the ammunition found at his house from two sporting goods stores.

Defendant was charged with stalking (Pen. Code,[1] § 646.9, subd. (a)—count 1), unlawfully manufacturing an assault weapon as to the Herstal (§ 30600, subd. (a)—count 2), nine counts of possession of an assault weapon, including one for the Herstal (§ 30605, subd. (a)—counts 3-11), felony commercial burglary (§ 459—count 12), felony grand theft of property (§ 487, subd. (a)—count 13), and petty theft (§ 488—count 14).

---

[1]     Undesignated statutory references are to the Penal Code.

3

## II

### Admission of Photographs at Trial

Before trial, the prosecutor sought admission of the photographs recovered from defendant's devices. The first set of pictures were nearly 300 screenshots of a computer desktop with various images of R.F. next to other images including those of legs and feet of other women and monster-like cartoons eating women. These screenshots were consistent with vorarephilia, or vore pornography, which is characterized by a neurotic desire to consume or be consumed by another person or creature. Defendant also labeled the screenshots with the description of what he was doing, often sexually, when he took the screenshot, such as "1-1-13 0915 knees right sex stared into her eyes snow white.bmp" and "6-6-12 2404 focusing on her face of her in the costume on kn.bmp."

The prosecutor described these photos as getting "to the meat and potatoes of the defendant's intent and obsession with the victim." Defense counsel argued the photos were private and not used in any way to harass or annoy. The trial court found these pictures admissible without explaining its reasoning.

The second set were photographs surreptitiously taken of 14 other women totaling over 350 pictures. Most of these pictures were taken in parking lots while the women were getting in or out of their cars, or while they walked down the sidewalk, and many focused on their legs. The prosecutor argued these were admissible under Evidence Code sections 1101, subdivision (b) and 1109. The trial court permitted these photos because they were "relevant to his intent in the stalking charge."

## III

### Verdict and Sentencing

The jury found defendant guilty of all charges except two of the automatic weapon possession counts. The court sentenced defendant to eight months (midterm) for stalking, eight years (upper term) for unlawful assault weapon activity of the Herstal, eight months (one-third midterm) each for six of the assault weapon possessions, and eight months

4

(one-third midterm) for commercial burglary, all to run consecutively. The court imposed and stayed pursuant to section 654 three years (upper term) for both grand theft and the remaining possession conviction for the Herstal.

DISCUSSION

I

*Admission of Photographs*

Defendant challenges the admission of both sets of photographs as being irrelevant and prejudicial. We disagree.

A.    *Legal Standards*

Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "No evidence is admissible except relevant evidence." (Evid. Code, § 350.) But relevant evidence may nonetheless be excluded under Evidence Code section 352 if the probative value of the evidence is outweighed by its prejudicial effect. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.) As the California Supreme Court has explained, " 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is 'prejudicial.' The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " ' " (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214.) "Evidence is not inadmissible under section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights." (*People v. Holford* (2012) 203 Cal.App.4th 155, 167.)

5

The crime of stalking is committed when a person "willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety." (§ 646.9, subd. (a).) "Someone acts *maliciously* when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to disturb, annoy, or injure someone else." (CALCRIM No. 1301.)

We review a trial court's rulings on the admissibility of evidence for abuse of discretion. (*People v. Benavides* (2005) 35 Cal.4th 69, 90.)

B.     *Photographs of R.F.*

Defendant argues the computer-enhanced pictures of R.F. were not relevant to the stalking charges because R.F. was not aware of them and they did not exhibit an intent to harass or follow her, or place her in fear. Unlike the texts and map to her house, these private thoughts and fixations bore no relevance to the stalking charges. These photos were also prejudicial, defendant argues, because they likely humiliated defendant and biased the jury against him.

These photographs tended to establish the obsession fueling defendant's stalking of R.F. Defendant crafted these hundreds of pictures with R.F. over the course of several years though he had only met her in person twice. The pictures were also sexual in nature, and this feeling was emphatically not reciprocated by R.F. Defendant was also found with a map of R.F.'s home and had admitted to "stalkering" her in multiple communications. The pictures of R.F. tended to show this obsession was not innocent, but that defendant intentionally did the wrongful act, thereby being relevant to the malicious intent element of the stalking charge.

These pictures were also not unduly prejudicial. Though they were explicit and sexual in nature, any tendency to evoke a negative emotional bias against defendant was due to the relevant issues in the case — whether defendant was maliciously stalking R.F. They were therefore prejudicial in the sense they tended to prove the prosecution's case.

6

This is not the type of prejudice required to overcome the photographs' probative nature. The trial court therefore did not abuse its discretion in admitting these pictures.

C.  *Photographs of Other Women*

Defendant next argues the photographs of the other women are not admissible under Evidence Code section 1101 or 1109 because they were not evidence of him stalking these women and they do not show any malicious or willful harassment of these women.  The photos are also prejudicial, he asserts, because they painted him as "a person interested in taking secret pictures of women, with the intention of satisfying a possible fetish involving their legs and hosiery," which has no bearing on whether he stalked R.F.  Defendant contends it was reasonably likely the jury convicted defendant not because he stalked R.F., but because of their emotional response to the pictures he took of these other women.

These photographs were relevant and admissible under Evidence Code section 1101.  This section prohibits past crimes and bad acts from being admitted to show propensity or bad character, but permits admission of evidence a person "committed a crime, civil wrong, or other act" for other reasons, such as to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident."  (Evid. Code, § 1101, subd. (b).)  The uncharged act must be sufficiently similar to the charged offense, but  " '[t]he least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent.  [Citation.] . . . In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' [Citations.]" [Citation.]' " (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)

Though these photos were not of R.F., they were relevant for similar reasons as the photos of R.F. — they tended to show defendant's intent to maliciously follow R.F. These photos show defendant following women without their knowledge or permission

7

from positions of hiding, usually in a car out of sight from the women, establishing defendant intentionally followed these women without their consent. Though not precisely in the same manner defendant stalked R.F., there is a sufficient degree of similarity to support the inference he likely harbored the same intent. That all the elements of stalking are not established by these photos does not render them irrelevant as they help establish at least one necessary element of stalking.

No substantial prejudice existed here either for the same reason. Any negative inference drawn by the jury is derived from the defendant's act of following women without their knowledge. This type of prejudice does not overcome the probative value of the evidence.

## II

### *Lesser Included Assault Weapons Instruction*

Defendant also contends the court failed to instruct the jury on assault weapon possession (§ 30605) for the Herstal, a lesser included offense of unlawfully manufacturing an assault weapon (§ 30600) because there was substantial evidence defendant possessed the Herstal.

The issue here is not whether the trial court should have instructed on a lesser included offense, because the court did instruct the jury on possession of the Herstal (count 3) in addition to instructing them on manufacturing the Herstal (count 2). The jury also found defendant guilty of both possessing the Herstal and unlawfully making the Herstal an assault weapon. The issue then, instead, is whether defendant was subject to multiple convictions because the possession is a lesser included offense of the manufacturing conviction. We conclude it is not.

When two offenses are charged, and the defendant is convicted of both, we apply the "elements test" to assess whether one is a necessarily included offense of the other and, in turn, whether multiple convictions are proper. (*People v. Reed* (2006) 38 Cal.4th 1224, 1229 ["In deciding whether multiple conviction is proper, a court should consider

8

only the statutory elements"]; *People v. Scheidt* (1991) 231 Cal.App.3d 162, 165-171 ["only a statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding"].) "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former." (*Reed*, at p. 1227.) In other words, "[i]f the crimes are defined in such a way as to make it impossible to commit the greater offense without also committing the lesser," then the lesser is necessarily included in the greater and a defendant's conviction of the lesser must be vacated. (*People v. Miranda* (1994) 21 Cal.App.4th 1464, 1467; *Reed*, at p. 1227 [" '[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former' "].)[2]

Section 30600 is violated when a person "manufactures or causes to be manufactured, distributes, transports, or imports into the state, keeps for sale, or offers or exposes for sale, or who gives or lends any assault weapon." (§ 30600, subd. (a).) Section 30605 is violated when a person "possesses any assault weapon." (§ 30605, subd. (a).) Possession can be actual or constructive. " ' "A defendant has actual possession when the weapon is in his [or her] immediate possession or control," ' i.e., when he or she is actually holding or touching it." (*People v. Bay* (2019) 40 Cal.App.5th 126, 132.) "To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person." (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417, disapproved on another ground in *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6.)

---

[2] Defendant relies on the accusatory pleading test, but this test is only applied "in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime." (*People v. Reed, supra*, 38 Cal.4th at p. 1231.)

It is possible to violate section 30600 without also violating section 30605 because possession is not necessary to satisfy several of the actions prohibited by section 30600. For example, one can "cause[] to be manufactured" an assault weapon without ever possessing it by paying one person to manufacture the assault weapon. Before the manufacturer ever transfers the weapon, the defendant would have violated section 30600 but not section 30605. Similarly, with importing, one can cause someone else to import an assault weapon without ever obtaining possession of that weapon. The statutory elements test is therefore not satisfied so the convictions for both manufacturing and possessing the Herstal were therefore valid.

## DISPOSITION

The judgment is affirmed.

_____/s/_____
BLEASE, J.

We concur:

_____/s/_____
RAYE, P. J.

_____/s/_____
ROBIE, J.

Filed 9/28/21

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C090234 |
| Plaintiff and Respondent, | (Super. Ct. No. 62141458) |
| v. | |
| GREGORY LEE WISE, | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed September 7, 2021, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II of the Background and part I of the Discussion.

1

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Placer County, Jeffrey S. Penney, Judge.  Affirmed.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Catherine Chatman, Supervising Deputy Attorney General, Kimberley A. Donohue, Deputy Attorney General, for Plaintiff and Respondent.

BY THE COURT:


_____/s/_____
RAYE, P. J.


_____/s/_____
BLEASE, J.


_____/s/_____
ROBIE, J.

2